1  JONATHAN H. BLAVIN (SBN 230269)
   jonathan.blavin@mto.com
2  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
3  San Francisco, CA  94105-3089

4  KATHERINE M. FORSTER (SBN 217609)
   katherine.forster@mto.com
5  ROSE LEDA EHLER (SBN 296523)
   rose.ehler@mto.com
6  BRANDON R. TEACHOUT (SBN 321672)
   brandon.teachout@mto.com
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
8  Los Angeles, California 90071-3426
   Telephone:     (213) 683-9100
9  Facsimile:     (213) 687-3702

10  *Attorneys for ByteDance Inc. and TikTok Inc.*

11

12                    UNITED STATES DISTRICT COURT

13       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15  REECE YOUNG and ASHLEY VELEZ,          Case No. 3:22-cv-01883
    individually and on behalf of all others
16  similarly situated,                    **DEFENDANTS' MOTION TO DISMISS
                                           PLAINTIFFS' SECOND AMENDED
17              Plaintiffs,                 CLASS ACTION COMPLAINT, OR,
                                           ALTERNATIVELY, TO COMPEL
18        vs.                              ARBITRATION; MEMORANDUM OF
                                           POINTS AND AUTHORITIES**
19  BYTEDANCE INC. AND TIKTOK INC.,
                                           Judge:     Honorable Vince Chhabria
20              Defendants.                 Location:  via Zoom
                                           Date:      January 12, 2023
21                                         Time:      10:00 A.M.

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.      INTRODUCTION ............................................................................................................. 1

II.     BACKGROUND ............................................................................................................... 2

      A.     TIKTOK AND CONTENT MODERATION ....................................................... 2

      B.     PROCEDURAL HISTORY ................................................................................. 2

      C.     PLAINTIFFS' ALLEGATIONS .......................................................................... 3

      D.     PLAINTIFF VELEZ'S ARBITRATION AGREEMENT ...................................... 4

III.    LEGAL STANDARD ....................................................................................................... 4

IV.    ARGUMENT .................................................................................................................... 4

      A.     WORKERS' COMPENSATION IS THE EXCLUSIVE REMEDY FOR PLAINTIFFS' CLAIMS AND DEFENDANTS OWE THEM NO INDEPENDENT DUTY ...................................................................................... 4

      B.     NO EXCEPTIONS TO WORKERS' COMPENSATION APPLY ...................... 5

              1.     PLAINTIFFS' "RETAINED CONTROL" THEORY STILL FAILS .......... 5

              2.     PLAINTIFFS' "UNSAFE EQUIPMENT" THEORY STILL FAILS .......... 9

              3.     PLAINTIFFS DO NOT ALLEGE PHYSICAL HARM ........................... 10

      C.     PLAINTIFFS STILL FAIL TO STATE A VALID UCL CLAIM ....................... 12

      D.     ALTERNATIVELY, PLAINTIFF VELEZ'S CLAIMS ARE SUBJECT TO ARBITRATION ................................................................................................. 14

V.     CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ............................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 4

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................... 12

*Chaconas v. JP Morgan Chase Bank*,
713 F. Supp. 2d 1180 (S.D. Cal. 2010) ........................................... 11

*Del Webb Communities, Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) ......................................................... 12

*Doe v. YouTube, Inc.*,
No. 20-cv-07493-YGR (N.D. Cal.) ......................................... 7, 13, 14

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .................................................... 14, 15

*Frazier v. ByteDance Inc.*,
No. 2:21-cv-9913 (C.D. Cal. Dec. 23, 2021) ..................................... 4

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ........................................................... 4

*Guerrero v. Halliburton Energy Servs., Inc.*,
231 F. Supp. 3d 797, 809 (E.D. Cal. 2017) ..................................... 14

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................... 12

*Hansen v. Musk*,
No. 3:19-cv-00413-LRH-WGC, 2020 WL 4004800 (D. Nev. July 15, 2020) ........................ 15

*Jones v. U.S.*,
No. 1:08-CV-01137 AWI DLB, 2011 WL 773285 (E.D. Cal. Feb. 28, 2011) ........................ 6

*Kasperzyk v. Shetler Sec. Servs., Inc.*,
No. C-13-3358 EMC, 2014 WL 1760040 (N.D. Cal. May 2, 2014) ........................ 12

*Mort v. U.S.*,
86 F.3d 890 (9th Cir. 1996) ............................................................. 13

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Nacarino v. Chobani, LLC*,
  20-cv-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021)......................................13, 14

*Petters Co. Inc. v. BLS Sales Inc.*,
  No. C 04-02160 CRB, 2005 WL 2072109 (N.D. Cal. Aug. 26, 2005)....................................5

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ............................................................................12

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .............................................................................13

*Varnado v. Midland Funding LLC*,
  43 F. Supp. 3d 985 (N.D. Cal. 2014) .....................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................14

*Zapata Fonseca v. Goya Foods Inc.*,
  No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)................................14

STATE CASES

*Alaniz v. Sun Pac. Shippers, L.P.*,
  48 Cal. App. 5th 332 (2020).........................................................................1, 3, 6

*Brannan v. Lathrop Constr. Assocs., Inc.*,
  206 Cal. App. 4th 1170 (2012) ...........................................................................6

*Bro v. Glaser*,
  22 Cal.App.4th 1398 (1994) .............................................................................11

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins.*,
  24 Cal. 4th 800 (2001)...................................................................................5

*Clark Cty. Pub. Emps. Ass'n v. Pearson*,
  106 Nev. 587 (1990) ....................................................................................15

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
  83 Cal. App. 4th 677 (2000).............................................................................15

*Delgadillo v. Television Ctr., Inc.*,
  20 Cal. App. 5th 1078 (2018) ...........................................................................10

*Friedman v. Merck & Co.*,
  107 Cal. App. 4th 454 (2003) ...........................................................................11

1

## **TABLE OF AUTHORITIES**
### (Continued)

2

**Page(s)**

3

*Gonzalez v. Mathis*,
    12 Cal. 5th 29 (2021) ............................................................... 5, 8

4

*Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cnty. of Clark*,
5
    133 Nev. 1019, 2017 WL 881877 (2017) (unpublished) ....................................14, 15

6

*Hooker v. Dep't of Transp.*,
7
    27 Cal. 4th 198 (2002)...........................................................5, passim

8

*Hughes v. Argonaut Ins. Co.*,
    88 Cal. App. 4th 517 (2001) ........................................................ 5, 12

9

*Khosh v. Staples Constr. Co.*,
10
    4 Cal. App. 5th 712 (2016)............................................................ 6, 8

11

*Kowalski v. Shell Oil Co.*,
12
    23 Cal. 3d 168 (1979)................................................................... 7

13

*Madden v. Summit View, Inc.*,
    165 Cal. App. 4th 1267 (2008) ......................................................... 8

14

*McCullar v. SMC Contracting, Inc.*,
15
    298 Cal. Rptr. 3d 785 (Ct. App. 2022) .................................................. 8

16

*McDonald v. Shell Oil Co.*,
17
    44 Cal. 2d 785 (1955).................................................................. 6

18

*McFarland v. Voorheis-Trindle Co.*,
    52 Cal. 2d 698 (1959).................................................................. 7

19

*McKown v. Wal-Mart Stores, Inc.*,
20
    27 Cal. 4th 219 (2002) ............................................................... 11

21

*Sandoval v. Qualcomm Inc.*,
22
    12 Cal. 5th 256 (2021) .............................................................. 2, 8

23

*SeaBright Ins. Co. v. U.S. Airways, Inc.*,
    52 Cal. 4th 590 (2011)............................................................... 3, 5

24

*Sullivan v. Oracle Corp.*,
25
    51 Cal. 4th 1191 (2011) .............................................................. 13

26

*Transmedia Network, Inc. v. Countrywide Bus. All., Inc.*,
    No. D038163, 2002 WL 31151623 (Cal. Ct. App. Sept. 27, 2002) (unpublished) .................. 11

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**FEDERAL STATUTES**

Federal Arbitration Act (9 U.S.C. §§ 5, 206) ................................................................. 1

**STATE STATUTES**

Cal. Civ. Code § 1633.7(d) ........................................................................................... 14

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 1

**TREATISES**

Restatement (Second) of Torts, § 7 ............................................................................... 11

Restatement (Second) of Torts, § 411 ........................................................................... 12

Restatement (Second) of Torts, § 414 ...................................................................10, 11, 12

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Thursday, January 12, 2023, at 10:00 a.m., via Zoom, Defendants ByteDance Inc. and TikTok Inc. ("Defendants") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint.  The Second Amended Complaint should be dismissed because it fails to state a claim for either common law negligence or a violation of California's Unfair Competition Law ("UCL").  Alternatively, Defendants will, and hereby do, move the Court for an Order compelling arbitration of Plaintiff Velez's claims in accordance with the Federal Arbitration Act (9 U.S.C. §§ 5, 206).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Plaintiffs' latest complaint is their third attempt to evade the exclusive remedy for workplace injuries—the workers' compensation regime.  They cannot.  Defendants take content moderation very seriously, but Defendants cannot be liable for injuries where workers' compensation applies.

Plaintiffs' Second Amended Complaint ("SAC") fails to fix the flaws in their prior two efforts.  The Court already has addressed the "retained control" exception, and already has ruled that the categories of control alleged, *i.e.*, "that TikTok sets work quotas, surveils the moderators' work, and provides the software that moderators use," all "fall squarely within the 'broad power' of supervision and control 'over results of the work' that TikTok is entitled to exercise without losing the protection of workers' compensation exclusivity."  (Dkt. 48 ("Order") at 2 (quoting *Alaniz v. Sun Pac. Shippers, L.P.*, 48 Cal. App. 5th 332, 341 (2020)).)  Plaintiffs have once again failed to allege that Defendants retained control over health and wellness benefits (or any other category of control)—they have simply alleged more detail regarding the categories that the Court *already* concluded were insufficient to state a claim.  That failure is dispositive.

Most crucially, Plaintiffs still fail to include any allegation suggesting that "TikTok prevents the plaintiffs' direct employers from exercising their own control over work conditions, such as by providing the support and precaution the moderators complain they lack."  (*Id.*)  In fact, Plaintiffs allege the *exact opposite*—that they *did* have access to counseling services and other

1   mental health benefits "*provided by their employers.*"  (SAC, Dkt. 50 ¶¶ 63–65 (emphasis added).)

2   Plaintiffs' own allegations wholly refute any potential liability under a "retained control" theory.

3        Further, Plaintiffs also have failed to add any allegations regarding the "affirmative

4   contribution" requirement of the retained control test.  As noted, Plaintiffs still do not and cannot

5   allege that Defendants prevented their employers from implementing the safety measures they

6   propose.  The allegations simply reiterate that Defendants could have taken those measures

7   themselves.  (*E.g.*, *id.* ¶¶ 106, 114, 125 ("Defendants fail to implement well-accepted standards to

8   mitigate harm to content moderators.").)  Allegations of "passive omission" do not constitute an

9   affirmative contribution.  *Sandoval v. Qualcomm Inc.*, 12 Cal. 5th 256, 280–82 (2021).

10        With respect to the "unsafe equipment" exception, Plaintiffs again fail to allege that

11   software can give rise to an unsafe equipment claim, or that the review software was defective in

12   any way causing harm.  And as to either "retained control" or "unsafe equipment," Plaintiffs again

13   fail to allege the requisite physical harm required to invoke either exception under California law.

14        With respect to the UCL claim, again, (a) there is no unlawful predicate act; (b) the UCL

15   cannot be applied extraterritorially; (c) Plaintiffs failed to allege the inadequacy of legal remedies;

16   and (d) they lack standing to seek forward-looking injunctive relief.

17        For each of these reasons, the SAC should be dismissed—this time with prejudice.

18   **II.   BACKGROUND**

19        **A.   TikTok and Content Moderation**

20        TikTok, a video-sharing community with millions of users, places paramount importance

21   on user safety.  (SAC ¶ 1, 30–31, 58.)  To mitigate exposure to harmful or objectionable content,

22   Defendants invest considerable resources in state-of-the-art technology that automatically detects

23   and removes such content.  (Compl., Dkt. 1 ¶ 102.)  Defendants also contract with third-party

24   firms specializing in content moderation that employ humans to screen content that is not

25   removed by AI.  (SAC ¶¶ 34, 44–45.)

26        **B.   Procedural History**

27        Plaintiffs filed the first Complaint on March 24, 2022.  Defendants moved to dismiss and

28   Plaintiffs filed an Amended Complaint substantively similar to the present one.  (Dkt. 16, Dkt. 23.)

The Court dismissed that Amended Complaint, concluding that "workers' compensation exclusivity applies" to bar the claims alleged.  (Order at 1 (citing *SeaBright Ins. Co. v. U.S. Airways, Inc.,* 52 Cal. 4th 590, 594 (2011).)  Plaintiffs' prior complaint "[did] not even come close to alleging that TikTok retained control."  (*Id.* at 2.)  This is because Plaintiffs' allegations that "TikTok sets work quotas, surveils the moderators' work, and provides the software that moderators use . . . fall squarely within the 'broad power' of supervision and control 'over results of the work' that TikTok is entitled to exercise without losing the protection of workers' compensation exclusivity."  (*Id.* (quoting *Alaniz*, 48 Cal. App. 5th at 341).)  As the Court further noted, "nowhere does the complaint allege that TikTok prevents the plaintiffs' direct employers from exercising their own control over work conditions, such as by providing the support and precautions the moderators complain they lack."  (*Id.*)

### C.   Plaintiffs' Allegations

The allegations in the present complaint are materially similar to Plaintiffs' prior iterations. Plaintiffs worked for third-party content-moderation firms—Velez for Telus International ("Telus") in Nevada (SAC ¶¶ 2, 24), and Young for Atrium Staffing Services Ltd. ("Atrium") in Tennessee (*id.* ¶¶ 3, 23).  In the course of their work, they used proprietary software called "TCS" to review user-uploaded video content.  (*Id.* ¶¶ 6, 37–42.)  Plaintiffs allege that the graphic content they reviewed has caused them "immense stress and psychological harm," but they do not allege any physical injuries.  (*Id.* ¶¶ 13, 113, 160 (alleging "an increased risk of developing serious mental health injuries").)  Plaintiffs claim that this mental harm has been exacerbated by quality-control standards allegedly set by TikTok.  (*Id.* ¶¶ 59–65.)  Plaintiffs also allege that Defendants failed to take sufficient measures to mitigate potential harm from viewing graphic content.  (*Id.* ¶¶ 104–130.) Plaintiffs omit allegations regarding the role of their own employers, although they acknowledge, as they must, that support and wellness benefits were "provided by their employers."  (*Id.* ¶¶ 59–65 (noting that such benefits were available "outside of company time").)

Plaintiffs' *new* allegations continue to focus on control of the *results of the work*, rather than employer-controlled work conditions.  Plaintiffs allege additional details regarding speed and accuracy standards, including that they were allegedly "constantly surveilled" by Defendants and

that Defendants routinely updated their Community Guidelines and other policies.  (*E.g.*, *id.* ¶¶ 4, 7, 9, 38–40, 124.)  Plaintiffs add further detail regarding their allegations that moderators are "flagged for reprimand or further penalties" if these standards are not met, including "having their pay withheld," though they conspicuously do not allege that Defendants (rather than their employers) are responsible for such actions.  (*E.g.*, ¶¶ 33, 61–62.)  Finally, Plaintiffs add new allegations regarding the video queue in the TCS software—namely, that content in various video queues "were commonly filled with a mix of materials" such that moderators may have been exposed to certain content within the last hour of their shift.  (*E.g.*, ¶¶ 55–56, 103, 107.)[1]

### D.    Plaintiff Velez's Arbitration Agreement

Plaintiff Velez executed and later acknowledged an agreement to arbitrate any and all claims (other than workers' compensation claims) concerning her employment with Telus.  (Decl. on Behalf of Telus Int'l ("Telus Decl.") ¶¶ 4–10 & Ex. 1 (the "Agreement"), & Exs. 2–3.)

## III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim" that "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "A district court does not err in denying leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (internal citations and quotations omitted).

## IV.    ARGUMENT

### A.    Workers' Compensation Is The Exclusive Remedy For Plaintiffs' Claims And Defendants Owe Them No Independent Duty

The Court already has concluded that Plaintiffs' claims for alleged injuries sustained in the

---

[1]  Counsel also previously brought suit against Defendants on behalf of another Telus employee, Candie Frazier, alleging substantially identical claims.  *Frazier v. ByteDance Inc.*, No. 2:21-cv-9913 (C.D. Cal. Dec. 23, 2021).  Ms. Frazier voluntarily dismissed her complaint on February 17, 2022, after Defendants wrote to counsel seeking the factual basis for her allegations and noting that she had executed an arbitration agreement with Telus.  (SAC ¶ 67; Blavin Decl. ¶ 4, Ex. 1 (Letter).)  Plaintiffs claim—without any evident basis—that "Defendants caused the Plaintiff to be fired . . . on Christmas Eve."  (SAC ¶ 67.)  These allegations are not only patently false, they are entirely irrelevant to whether these Plaintiffs have stated a claim in this case.

course of their employment fail unless they plead facts sufficient to establish the applicability of an exception to the general rule that workers' compensation is the exclusive remedy for such injuries. (Order at 1 ("Even though the plaintiffs have sued TikTok and ByteDance instead of their employers, workers' compensation exclusivity applies." (citing *SeaBright*, 52 Cal. 4th at 594).) Under this general rule, a hirer (like TikTok) of an independent contractor (like Telus and Atrium) has no duty to ensure workplace safety for the third-party contractor's employees. *Gonzalez v. Mathis*, 12 Cal. 5th 29, 53 (2021) (citing *SeaBright*); *cf. also id.* (no duty of care under assumption-of-risk doctrine when risks are "inherent" to an occupation, such as when a kennel worker "assumed the risk of being bitten or otherwise injured by the dogs under her care").[2]

Here, Plaintiffs allege mental-health injuries arising out of their employment by Telus and Atrium, which is the "only" context in which they "performed content moderation services for TikTok." (SAC ¶¶ 2–3, 44–45.)  Plaintiffs' claims should again be dismissed. *E.g., Charles J. Vacanti, M.D., Inc. v. State Comp. Ins.*, 24 Cal. 4th 800, 812–13 (2001) (workers' compensation subsumes all tort remedies otherwise available for injuries arising out of course of employment); *Hughes v. Argonaut Ins. Co.*, 88 Cal. App. 4th 517, 531 (2001) (applying same rule to UCL claims).

### B.   No Exceptions To Workers' Compensation Apply

As before, Plaintiffs attempt (but fail) to plead two exceptions to the exclusivity rule—the "retained control" and "unsafe equipment" exceptions.

### 1.   Plaintiffs' "Retained Control" Theory Still Fails

Plaintiffs renew their assertion that Defendants owe them a duty based on the theory that Defendants negligently "retained control over certain aspects of the[ir] work." (SAC ¶ 144.)  The "retained control" exception applies only when (1) a hirer "retained control" and (2) the "hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." *Hooker v. Dep't of Transp.*, 27 Cal. 4th 198, 202 (2002) (emphasis in original).  Plaintiffs still have not pled either of these two basic elements—they have again failed to allege that Defendants retained control over

---

[2] For purposes of this motion, Defendants again assume California law applies to these claims, as Plaintiffs assert (SAC ¶¶ 4, 174–175), reserving and without waiving the issue. *E.g., Petters Co. Inc. v. BLS Sales Inc.,* No. C 04-02160 CRB, 2005 WL 2072109, at *12 (N.D. Cal. Aug. 26, 2005).

anything other than "the results of the work," and they have not identified any *action* (rather than *inaction*) by Defendants that "affirmatively contributed" to their injuries.  *E.g.*, *Khosh v. Staples Constr. Co.*, 4 Cal. App. 5th 712, 718 (2016) ("A hirer's failure to correct an unsafe condition, by itself, does not establish an affirmative contribution."); *Jones v. U.S.*, No. 1:08-CV-01137 AWI DLB, 2011 WL 773285, at *4 (E.D. Cal. Feb. 28, 2011) (dismissing retained-control claim).

    *"Retained Control."*  It is well-settled that a hirer's "general control" over aspects of an independent contractor's work and "broad power of control over results of the work" does not demonstrate retained control.  *Alaniz*, 48 Cal. App. 5th at 341.  As the Court already has concluded, Plaintiffs' allegations regarding TikTok's work quotas, surveillance, and provision of the TCS review software all "fall squarely within the 'broad power' of supervision and control 'over results of the work' that TikTok is entitled to exercise."  (Order at 2 (quoting *Alaniz*).)  It is dispositive for purposes of the SAC that Plaintiffs have failed to allege any new *type* of control, only additional *detail* regarding TikTok's "broad power over results of the work."

    For example, Plaintiffs have alleged further detail regarding speed and accuracy standards (*see* SAC ¶ 124 ("Defendants also impose strict quantity and accuracy quotas.")), including that Plaintiffs "have their work flagged for review by moderators from TikTok to check for accuracy" (*id.* ¶ 38), were purportedly "constantly surveilled" through the TCS software as a "means of enforcing" the standards and "check[ing] for accuracy" (*id.* ¶¶ 38-41), and that TikTok routinely provided updates regarding how to implement changes to its Community Guidelines and other policies (*id.* ¶¶ 4, 9).  Each of these actions alleged, even if true, still falls within the permissible "broad power of control over results of the work."  *Alaniz*, 48 Cal. App. 5th at 341; *McDonald v. Shell Oil Co.*, 44 Cal. 2d 785, 788, 790 (1955) (hirer may retain "right to inspect" and "prescribe alterations or deviations in the work"); *Brannan v. Lathrop Constr. Assocs., Inc.*, 206 Cal. App. 4th 1170, 1178–80 (2012) (hirer may retain control over "scheduling" and "coordinating" work).

    Along the same lines, Plaintiffs have alleged that when "a content moderator does not perform to Defendants' standards," they "will be flagged for reprimand or further penalties." (SAC ¶ 61.)  Even if true, identifying employees who are not meeting the hirer's quotas and standards, and suggesting to the contractor that the contractor retrain or reprimand the contractor's

own employees so that the hirer's standards for the work are met, is simply another facet of the

hirer's right to control "the results of the work" and does not satisfy the retained-control exception.

*Cf. Kowalski v. Shell Oil Co.*, 23 Cal. 3d 168, 173, 179 (1979) (no special employment

relationship with independent contractor even where "Shell could also request Peterson to remove

an employee whose work Shell found unsatisfactory"); *McFarland v. Voorheis-Trindle Co.*, 52

Cal. 2d 698, 705 (1959) (no special employment relationship even when hirer "could, and on one

occasion did, return [an unsatisfactory worker] to the tractor company and obtain a replacement").

Further, just as in the prior complaints Plaintiffs' counsel has filed, Plaintiffs obscure the

role of their actual employers relative to the role of Defendants—but seek to impute their

employers' actions to Defendants using vague and conclusory allegations.  For instance, Plaintiffs

repeatedly elide the distinction between punishments imposed *by their employers* (*e.g.*, having their

pay withheld) and punishments imposed *by Defendants*, which Plaintiffs never squarely allege.

(SAC ¶ 61 (alleging that Defendants "instruct their third-party vendors to carry out such actions");

¶ 62 ("On information and belief, content moderators were punished by having promotional

opportunities denied, receiving the worst shift times, and having their pay withheld if they did not

match speeds mandated by the Defendants."); ¶ 33.)[3]  Plaintiffs have an obligation to make *specific*

allegations about their own experiences, and they have not done so.  (*See* Hrg. Tr., Dkt. 45 at

21:10–22:16 (The Court: "[Y]ou're confident that you can allege that in good faith and consistent

with Rule 11?"  . . . Counsel: "I would like, if I need to re-allege this, to talk with each of the

Plaintiffs and re-allege it for each of them to reflect their personal circumstances.").)  Plaintiff

Velez and Plaintiff Young's inability to state a single *specific* allegation regarding any *specific*

punishment imposed on them *by Defendants*, rather than by their *own employers*, adds to the facial

deficiencies of their "retained control" theory.  (*See, e.g.*, Dkt. 17-2 (July 14, 2021 Order from *Doe*

*v. YouTube, Inc.*, No. 20-cv-07493-YGR (N.D. Cal.) ("*Doe* order")) (dismissing similar retained

control claim brought by content moderator for failure to allege "what role" employer had "relative

to YouTube's role"); *see also* Dkt. 17 (Defs.' pending Request for Judicial Notice of same).

---

[3] The SAC is replete with such sleight of hand. *E.g.*, SAC ¶ 46 ("Plaintiffs were trained directly *with TikTok standards*"); ¶ 47 ("were quizzed weekly *at Defendants' behest*") (emphases added).

Case No. 3:22-cv-01883

1    ***"Affirmative Contribution."*** Even if Plaintiffs had sufficiently alleged that Defendants did

2    retain control, they do not and cannot allege that Defendants negligently exercised such control in

3    any way that "affirmatively contributed" to their alleged harms.  *See McCullar v. SMC Contracting,*

4    *Inc.*, 298 Cal. Rptr. 3d 785, 792–99 (Ct. App. 2022) ("Although we accept, for purposes here, that

5    SMC retained control over Tyco's work, we are not persuaded that SMC negligently exercised its

6    retained authority in a manner that affirmatively contributed to McCullar's injuries.").  "A hirer's

7    conduct satisfies the affirmative contribution requirement when 'the hirer in some respect

8    induced—*not just failed to prevent*—the contractor's injury-causing conduct.'"  *Id.* at 791

9    (emphasis added) (quoting *Sandoval*, 12 Cal. 5th at 277).  That is, a hirer's alleged *failure* to

10   implement precautionary measures does not constitute *affirmative* contribution to harm.  *E.g.,*

11   *Hooker*, 27 Cal. 4th at 210; *Khosh*. 4 Cal. App. 5th at 718; *Madden v. Summit View, Inc.*, 165 Cal.

12   App. 4th 1267, 1276–78 (2008) ("[F]ailing to install a guardrail" is non-actionable "passive"

13   conduct, even if the plaintiff's injury "was proximately caused by the absence.").

14       This is particularly so where, as here, Plaintiffs' employers "remained entirely free to

15   implement (or not) any of these precautions in its own manner."  *Sandoval*, 12 Cal. 5th at 280–82;

16   *McCullar,* 298 Cal. Rptr. 3d at 794 ("Nor did SMC prohibit McCullar from removing the ice.").  As

17   the California appellate courts consistently have held (most recently in *McCullar*), this remains true

18   even where the hirer of the contractor allegedly *created* the hazardous condition in the first place.

19   *See id.* at 793 ("[E]ven when the hirer of a contractor negligently creates a known workplace hazard,

20   the court has concluded that the contractor still retains the responsibility for assessing whether its

21   workers can perform their work safely"; "[a]lthough we accept that SMC's conduct caused ice to

22   form and required Tyco to take extra safety precautions to account for the ice, we conclude these

23   facts are insufficient to show that SMC's exercise of its retained control affirmatively contributed to

24   McCullar's injuries."); *Gonzalez*, 12 Cal. 5th at 53 ("Gonzalez argues that since Mathis increased the

25   risk that he would fall off the roof, Mathis must be held liable.  Gonzalez is mistaken.").

26       Here, the gravamen of Plaintiffs' claims continues to be the non-actionable contention that

27   Defendants *failed* to implement certain wellness and safety measures to mitigate their harms.  (*E.g.,*

28   SAC ¶¶ 106, 114 ("Defendants failed to implement workplace safety measures that meet industry

-8-                                  Case No. 3:22-cv-01883

standards"); 118 ("Defendants provide no training on how to address their personal reactions to the content they review"); 128 ("Defendants also fail to provide appropriate psychological support to content moderators."); Hrg. Tr., Dkt. 45 at 18:20-25 (contending that TikTok "had an affirmative obligation to propose and have their contractors do these things to prevent the harm to the contractors, and they never did.  That's the act of negligence in this part.").)  That is legally insufficient.  Further, even if the third-party content flagged for review by Defendants created a "hazard," there is no allegation (nor could there be) that Defendants prevented Telus and Atrium from addressing that hazard as they saw fit.  This Court recognized the problem in addressing the prior complaint, and the same problem persists here:  "[N]owhere does the complaint allege that TikTok prevents the plaintiffs' direct employers from exercising their own control over work conditions, such as by providing the support and precautions the moderators complain they lack." (Order at 2.)  This failure is fatal to Plaintiffs' legal theory.  Indeed, Plaintiffs continue to allege that they *did* have access to counseling services and other mental health benefits "*provided by their employers*," and that they *were* able to use these benefits.  (SAC ¶¶ 63–65 (emphasis added).) When the Court asked Plaintiff's counsel at the last hearing, "what control is TikTok exercising such that the employers can't do the[se] things?", Plaintiff's counsel responded frankly, ***"I don't think we're alleging a prevention.  I don't think that's the issue.***"  (Hrg. Tr., Dkt. 45 at 18:17-25 (emphasis added).)  Plaintiffs' theory of "retained control" is squarely barred by controlling law.

### 2.     Plaintiffs' "Unsafe Equipment" Theory Still Fails

Plaintiffs also once again "halfheartedly" attempt to plead that Defendants negligently provided "unsafe equipment," without even attempting to add new factual allegations to remedy the defects identified by the Court.  (Order at 3; *see* SAC ¶¶ 115–22.)

***First***, even assuming *arguendo* that software can give rise to an "unsafe equipment" claim (and Defendants are not aware of any authority suggesting that it can), the Court rightly recognized in its Order granting the motion to dismiss that "the plaintiffs allege no defect or safety issue with the software itself."  (Order at 3.)  That remains the case; Plaintiffs still do not allege that the TCS review software is *defective*—only that their operation of the software to review harmful content worsens harm caused *by the content*.  (*E.g.*, SAC ¶ 13 (injuries were "a result of constant and

1   unmitigated exposure to . . . extremely disturbing images"); ¶ 149 (alleging "physical and

2   psychiatric risks associated with exposure to graphic imagery through TCS").)  Likewise,

3   allegations that Plaintiffs are "surveilled" through the software (*e.g.*, *id.* ¶ 39) do not constitute an

4   allegation of any software *defect*; again, even if true, they constitute an allegation that Plaintiffs

5   were harmed by Defendants' alleged efforts to control the results of the work because the review

6   software *functions as intended*.  Finally, California courts have not "stretched" the unsafe

7   equipment exception to apply to software, but have applied it only to *physical* equipment.  (*See*

8   Defs' MTD Am. Compl., Dkt. 27 at 10–11 (collecting cases); *cf.* Order at 3.)

9       **Second**, Plaintiffs still do not allege that the TCS software has *affirmatively contributed* to

10  their injury, as they must.  Plaintiffs' newly added allegations that they were unable to avoid

11  graphic content because video "queues, that were supposed to contain less graphic information,

12  were commonly filled with a mix of materials" (SAC ¶¶ 55–56, 103, 107) simply boil down to an

13  assertion that "review technology . . . could be made safer if proper precautions were followed."

14  (*Id.* ¶ 148).  As above and as recognized by the Court, this alleged *passive* omission is insufficient;

15  California courts have "repeatedly rejected the suggestion that the passive provision of an unsafe

16  workplace is actionable" against a non-employer.  *Delgadillo v. Television Ctr., Inc.*, 20 Cal. App.

17  5th 1078, 1093 (2018) ("[F]ailure to provide safety equipment does not constitute an 'affirmative

18  contribution,'" even if "it is undeniable that" such failure contributed to harm.).

19      ### 3.   Plaintiffs Do Not Allege Physical Harm

20      Plaintiffs' claims that the "retained control" and "unsafe equipment" exceptions apply also

21  fail for the additional reason that Plaintiffs have not alleged that they suffered any physical harm, as

22  they must to state a claim under either exception.  (*Compare* SAC ¶¶ 13, 113 (alleging "immense

23  stress and psychological harm), ¶ 160 ("increased risk of developing serious mental health injuries"),

24  *with* Am. Compl., Dkt. 23 ¶¶ 8, 69, 124 (same); *cf.* Order at 2 (noting Plaintiffs' "unconvincing

25  arguments that they did, in fact, plead physical injury").)  Plaintiffs have not offered any new

26  allegations purporting to demonstrate physical harm.

27      In *Hooker*, the California Supreme Court held that "an employee of a contractor may sue

28  the hirer of a contractor for the tort of negligent exercise of retained control set forth in section

414" of the Restatement (Second) of Torts, "for physical harm *to others*."  27 Cal. 4th at 201, 206
(emphasis in original).  The "physical harm" requirement also applies to Plaintiff's "unsafe
equipment" exception theory.  *See McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219, 224 (2002)
(adopting "unsafe equipment" exception, relying on *Hooker* and an earlier California case holding that
a "hirer is liable *for physical harm*" caused by negligent hiring (emphasis added)).[4]

This Court was not "fully satisfied" with the arguments previously articulated and asked the
parties to address this issue further.  (Order at 1.)  The rule set forth in *Hooker* requiring pleading
"physical harm" for a negligent exercise of retained control claim is consistent with the general rule
under California law limiting "the extent to which defendants may be liable for negligent infliction
of emotional distress without physical injury . . . due to public policy considerations."  *Varnado v.
Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (citing *Bro v. Glaser*, 22
Cal.App.4th 1398, 1440–41 (1994) and collecting other authorities).  Due to the difficulty in
evaluating such claims, California law requires the defendant to have engaged in additional,
egregious conduct before a plaintiff is entitled to recover for emotional or psychological injuries
alone: "[r]ecovery for emotional distress in negligence cases is generally not available 'unless
malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or
outrageous circumstance, can be shown.'"  *Id.* (citing *Chaconas v. JP Morgan Chase Bank*, 713 F.
Supp. 2d 1180, 1186 (S.D. Cal. 2010) (collecting cases involving mishandling cremated remains,
misdiagnosing syphilis, and failing to notify a plaintiff that her child had been molested)).

Under the plain language of the Restatement, *Hooker*, and this background presumption of
California law generally barring negligence claims for emotional harm alone, subsequent courts to
consider the issue have held that "retained control" claims fail in the absence of a plaintiff pleading
and proving "physical" harm.  *See Transmedia Network, Inc. v. Countrywide Bus. All., Inc*., No.

---

[4] The Restatement defines "physical harm" as "the physical impairment of the human body, or of
land or chattels," Rest. 2d Torts, § 7, and its commentary provides that when a Restatement rule is
expressly limited to apply only to certain types of injury—as section 414 is with respect to
"physical harm"—the rule shall *exclusively* apply to that enumerated type.  *Id.*, § 7, com. b ("In
each such case the intent is to limit the rule stated to the particular kind of harm specified.").  The
California Court of Appeal has held in applying this definition that "physical" harm does not
encompass "emotional injury."  *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 484–87 (2003).

D038163, 2002 WL 31151623, at *9 (Cal. Ct. App. Sept. 27, 2002) (unpublished) (holding that "the plain language of the Restatement Second of Torts, sections 7, 411 and 414, as well as other persuasive authority, *preclude claims* against principals for negligent hiring or negligent exercise of retained control of independent contractors *absent pleading and proof of physical harm* to persons or property" (emphases added)); *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC, 2014 WL 1760040, at *3, 5 (N.D. Cal. May 2, 2014) (dismissing "retained control" claim seeking "relief purely for emotional injury" because "*Hooker* and Restatement Section 414 apply only where the employee suffered 'physical injury'").

Particularly in the absence of any indication that California courts would extend liability under these exceptions beyond the scope of the Restatement to include solely emotional harm, Plaintiffs' failure to allege physical harm independently dooms their retained control and unsafe equipment claims.  *See Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1154–55 (9th Cir. 2011) ("Federal courts should 'hesitate prematurely to extend the law . . . in the absence of an indication from the [state] courts or [state] legislature that such an extension would be desirable.'").

### C.    Plaintiffs Still Fail To State A Valid UCL Claim

Plaintiffs' UCL claim also should be dismissed because Plaintiffs' predicate acts—their "retained control" and "unsafe equipment" theories (SAC ¶¶ 169-71)[5]—fail for the reasons set forth above, and thus cannot serve as the basis for a UCL claim.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("plaintiffs cannot state a UCL claim" where "such a claim is predicated solely on . . . violations of the law, which they failed to allege"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.").  Even if these allegations did not fail on the substance, these predicate "unlawful" acts constitute only alleged common-law violations, and therefore would not suffice to state a claim under the "unlawful" prong.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (plaintiff failed to state a claim under unlawful prong

---

[5] Plaintiffs appear to allege "negligently provid[ing] inadequate training materials" as a separate violation underlying their UCL claim.  (SAC ¶ 171.)  No "negligent provision of inadequate training materials" exception to worker's compensation exclusivity exists, nor is there an exception for UCL claims.  *See, e.g., Hughes*., 88 Cal. App. 4th at 531.

1   because he did "not go beyond alleging a violation of common law").  Even apart from the fatal

2   absence of any viable predicate violation, the UCL claim fails for three additional reasons.

3       ***First***, the statute does not apply extraterritorially—as out-of-state residents seeking relief for

4   injuries allegedly sustained doing work outside of California, Plaintiffs cannot state a claim under

5   California's UCL.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Plaintiffs cannot rely

6   on the fact that TikTok or ByteDance is headquartered in California to overcome this problem.  In

7   *Sullivan*, the California Supreme Court found that the "decision-making process" leading to the

8   defendant's allegedly wrongful conduct occurred at the defendant's headquarters in California.  *Id.*

9   at 1208.  Nonetheless, the court held that the UCL did not extend to the plaintiffs' claims because

10  they were "nonresidents" of California and "worked in other states."  *Id*. at 1207.  The same is true

11  here.  Plaintiffs reside in Nevada and Tennessee, and allege that they performed the relevant

12  content-moderation work and viewed the allegedly harmful content in their homes.  (SAC ¶¶ 23–

13  24.)  Because all of the conduct Plaintiffs contend is "unlawful" occurred where they performed

14  their work, not in California, the UCL does not apply here at all.  *See* Dkt. 17-2 (*Doe* order)

15  (dismissing similar claims for failure to allege "relevant conduct in California").  Plaintiffs' new

16  allegation—that "Defendants oversee all content moderation" from Los Angeles—does not change

17  this result; if anything, it confirms the similarity of these claims to those in *Sullivan*.  (SAC ¶ 49.)

18  There, the court held that the UCL did not extend to the plaintiffs' claims because the decisions

19  made in California were not "unlawful in the abstract"; rather, the predicate act was "the failure to

20  pay overtime when due" to nonresident plaintiffs.  *Id*.

21      ***Second***, Plaintiffs' UCL claim should be dismissed for failure to plead "that [they] lack[] an

22  adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)

23  (citing *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996)).  Conclusory allegations do not suffice.

24  *Nacarino v. Chobani, LLC*, 20-cv-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021)

25  (dismissing a complaint alleging that the plaintiff "lacks an adequate remedy at law for future

26  harm" for failure to "allege any specific facts . . . showing that damages [ ] are necessarily

27  inadequate or incomplete").  Plaintiffs' negligence claim seeks legal remedies in the form of

28  medical monitoring, treatment, and compensatory damages for the same allegedly unlawful conduct

1    identified in Plaintiffs' UCL claim. *See Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-

2    LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (plaintiff had an adequate remedy at law

3    provided by other causes of action based upon same factual predicates). Plaintiffs fail to allege any

4    facts demonstrating that the damages they seek under their negligence claim are inadequate or

5    incomplete such that equitable relief under the UCL is justified. *Nacarino*, 2021 WL 3487117, at

6    *12; *see also* Dkt. 17-2 (*Doe* order) (dismissing similar UCL claim against YouTube for failure to

7    allege inadequacy of remedy at law).

8          **Third**, Plaintiffs lack standing to seek prospective injunctive relief "requiring Defendants to

9    implement safety guidelines for all content moderators" (SAC ¶ 185) because they are no longer

10   employed as content moderators (*id.* ¶¶ 24–25.) Plaintiffs who are no longer employed by a

11   defendant "lack standing to seek injunctive or declaratory relief against its employment practices."

12   *Guerrero v. Halliburton Energy Servs.*, Inc., 231 F. Supp. 3d 797, 809 (E.D. Cal. 2017) (quoting

13   *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 364 (2011)). The UCL claim for injunctive relief

14   should be dismissed. *See* Dkt. 17-2 (*Doe* order) (dismissing substantially identical UCL claims for

15   injunctive relief given moderator's status as past employee).

16         **D.      Alternatively, Plaintiff Velez's Claims Are Subject To Arbitration**

17         If Plaintiffs' claims are not dismissed, Defendants move in the alternative to compel

18   arbitration of Plaintiff Velez's claims. Velez is party to an Arbitration Agreement with her

19   employer, Telus (*see* Telus Decl. ¶¶ 6, 10 & Exs. 1–3), and she is equitably estopped from avoiding

20   arbitration of her claims because her allegations are "intertwined with" and "substantially

21   interdependent" with her employment relationship. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d

22   867, 874–75 (9th Cir. 2021) (California law); *Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State*

23   *in & for Cnty. of Clark*, 133 Nev. 1019, 2017 WL 881877, at *2 (2017) (unpublished) (Nevada law).

24         Plaintiff electronically signed the Agreement on April 29, 2021, and re-acknowledged the

25   agreement on June 11, 2021. (Telus Decl. ¶¶ 6, 10 & Ex. 3.) These signatures have the same legal

26   effect as a handwritten one. Cal. Civ. Code § 1633.7(d). Velez's Arbitration Agreement broadly

27   provides that it applies to "all claims or causes of action" including tort and statutory claims "under

28   any federal, state, or local law" concerning her employment (excepting workers' compensation

1  claims).  (Telus Decl. Exs. 1–2.)  Velez concedes that her claims are premised on her employment

2  with Telus.  (SAC ¶ 44.)  Thus, if these claims were to survive dismissal, they would fall squarely

3  within the scope of the Agreement.  *See Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App.

4  4th 677, 686-87 (2000)); *Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 591 (1990).

5  Velez would plainly be obligated to pursue her claims in arbitration if she brought them

6  against Telus.  The doctrine of equitable estoppel precludes her from avoiding her agreement by

7  bringing these claims against Defendants instead.  California law "allows a nonsignatory to invoke

8  arbitration under the doctrine of equitable estoppel even when a signatory 'attempts to avoid

9  arbitration by suing nonsignatory defendants for claims that are based on the same facts and are

10  inherently inseparable from arbitrable claims against signatory defendants.'"  *Franklin*, 998 F.3d at

11  870–71.  In *Franklin*, the Ninth Circuit held that a hospital could invoke an arbitration agreement

12  between a staffing agency and a nurse assigned by the staffing agency to work in the hospital

13  because the claims "were 'intimately founded in and intertwined with' his employment contract with

14  the staffing agency."  *Id.*; *id.* at 874–75.  Likewise, under Nevada law, equitable estoppel is

15  warranted when a signatory "raises allegations of substantially interdependent and concerted

16  misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Hard Rock*

17  *Hotel*, 2017 WL 881877 at *2; *see also Hansen v. Musk*, No. 3:19-cv-00413-LRH-WGC, 2020 WL

18  4004800, at *3 (D. Nev. July 15, 2020) ("allegations of 'substantially interdependent and concerted

19  misconduct' between Tesla, the signatory, and Musk, the nonsignatory").

20  Just as in these cases, the claims Velez alleges are intertwined and interdependent with her

21  employment relationship with Telus.  Velez was "hired by Telus" and "*only* performed content

22  moderation services for TikTok *while employed by Telus*."  (SAC ¶ 44 (emphasis added).)  As a

23  result, if worker's compensation is not the sole remedy for Plaintiff's claims (and it is), Plaintiff

24  Velez is equitably estopped from spurning her agreement to arbitrate them.

25  **V.      CONCLUSION**

26  For these reasons, Plaintiffs' claims should be dismissed without leave to amend.  Failing

27  that, Ms. Velez's claims should be ordered to arbitration.

28

1    DATED:  November 30, 2022              MUNGER, TOLLES & OLSON LLP

2

3                                          By:   */s/ Jonathan H. Blavin*

4                                                JONATHAN H. BLAVIN
                                           Attorneys for ByteDance, Inc. and TikTok, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28