UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REECE YOUNG, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BYTEDANCE INC., et al.,<br><br>    Defendants. | Case No.  22-cv-01883-VC<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 51 |

  As part of their jobs, Reece Young and Ashley Velez watched hours of disturbing videos showing necrophilia, bestiality, violence against children, and the like. Both Young and Velez worked for independent "content moderation" firms that were hired by TikTok, a popular social media app. They say that TikTok failed to adopt reasonable measures to mitigate the harm from these videos, and that they suffered psychological injuries as a result.

  The primary question here is whether the complaint adequately alleges that TikTok controlled the moderators' work to such a degree that it can be held liable for its alleged negligence, even though Young and Velez were directly employed by other companies. The answer is yes. But, for the reasons explained below, Young and Velez cannot bring a separate claim under California's Unfair Competition Law. The motion to dismiss is therefore denied in part and granted in part.

**I**

  At the motion to dismiss stage, a court accepts the complaint's "well-pleaded factual allegations" as true. *Walker v. Fred Meyer, Inc*., 953 F.3d 1082, 1086 (9th Cir. 2020). The Second Amended Complaint alleges as follows:

TikTok is a social media app that allows users to post short videos. Second Amended Complaint ("Compl.") ¶¶ 27–30. It has millions of active users, and more than a billion videos are viewed on the app every day. ¶ 30. Like many social media apps, TikTok prohibits inappropriate content on its platform. ¶ 31. But TikTok doesn't always enforce this policy directly. It relies on users to report videos, and it outsources the task of reviewing those videos to third-party "content moderation" firms. ¶¶ 31, 44–45. Those firms hire individual "content moderators," who review reported videos and remove them from the app if they violate TikTok's terms of use. ¶¶ 2, 3, 31, 123.

Young and Velez were two of these content moderators. ¶¶ 2, 3. Young was hired by Atrium Staffing Services in Tennessee, and Velez was hired by Telus International in Nevada. ¶¶ 23–24, 44–45. Although the plaintiffs were ostensibly employed by these companies, Atrium and Telus did "little more than issue paychecks"—it was TikTok that was really in control.[1] ¶ 57. TikTok provided all "instructional" and "training" materials. ¶ 116. TikTok required content moderators to use its proprietary "TCS" software to review its videos, and it exercised "full control" over that software. ¶¶ 37, 127. And TikTok imposed punishing quantity and accuracy quotas: Some moderators viewed thousands of videos each day, and they were required to have an accuracy rate of up to 95%. ¶¶ 31, 124. TikTok enforced these quotas by "constantly surveil[ling]" moderators through its software. ¶ 39. "Any breaks, even as small as a couple minutes, [were] flagged by the TCS software and reflected" in content moderators' performance evaluations. ¶ 124.

Meanwhile, content moderators like Young and Velez watched a seemingly endless stream of disturbing videos—videos showing bestiality, necrophilia, violence against children, and similar content. ¶¶ 11, 73. Young and Velez allege that TikTok failed to take reasonable measures to mitigate the harm caused by these videos. ¶ 113. They say that TikTok failed to

---

[1] Young and Velez have sued both TikTok and its parent company ByteDance. The parties have not distinguished between these two defendants for purposes of this motion to dismiss, so this ruling will refer to them collectively as "TikTok" for simplicity's sake.

make certain technical changes to its software that would have reduced the impact of the videos, like muting their audio or changing their color or resolution. ¶ 125. They say they were unable take breaks from graphic videos because, although TikTok purported to organize the videos by category, "queues" that were not supposed to contain graphic content often did. ¶ 55. Finally, they say these harms were exacerbated by TikTok's strict productivity standards. ¶ 63. Based on these allegations, Young and Velez bring a claim for common law negligence and a claim under California's Unfair Competition Law against TikTok and its parent company ByteDance.

The Court previously granted TikTok's motion to dismiss the First Amended Complaint. Young and Velez then filed a Second Amended Complaint. TikTok has now moved to dismiss again.

## II

Both parties agree that this motion should be decided under California law—a surprising proposition given that Young and Velez worked in Tennessee and Nevada, respectively. But a federal court sitting in diversity follows the "forum state's choice of law rules to determine the controlling substantive law." *Mazza v. American Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Under California's choice of law rules, California law applies unless a party timely invokes the law of a foreign state. *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 561 (9th Cir. 2019). Neither TikTok nor the plaintiffs have invoked the law of another state, so California law it is.

## III

Under California law, a person or entity that hires an independent contractor (the "hirer") is ordinarily not liable if that contractor's workers are injured on the job. *Sandoval v. Qualcomm Inc*., 12 Cal. 5th 256, 270 (2021). This rule is known as the *Privette* doctrine, named for the case that first described it. *Id. See generally Privette v. Superior Court*, 5 Cal. 4th 689 (1993). TikTok argues that the *Privette* doctrine applies here, so it cannot be held liable for the injuries of Young and Velez, its contractor's employees.

Historically, this doctrine was justified primarily with reference to the workers' compensation system. The workers' compensation system is a "no-fault" regime, intended to be the "exclusive remedy against an employer" for on-the-job injuries. *Tverberg v. Fillner Construction, Inc.*, 49 Cal. 4th 518, 525 (2010). As such, the system protects the contract worker's employer—the contractor—from tort liability. *Id.* But workers' compensation protects only the contractor, not the company that hired the contractor (the hirer). *Sandoval*, 12 Cal. 5th at 270. Given that framework, California courts have said it is "ordinarily unfair" to let the contract worker circumvent workers' compensation exclusivity by just suing the hirer instead. *Id.*

While early cases focus on the availability of workers' compensation, the California Supreme Court has more recently "recast [the] primary rationale for the *Privette* doctrine in terms of delegation." *Id.* Under this rationale, the hirer has "delegated" to the contractor the "responsibility to do the work safely." *Id.* at 269. "Independent contractors by definition ordinarily control the manner of their own work," and "hirers typically hire independent contractors precisely for their greater ability to perform the contracted work safely and successfully." *Id.* Given its control and expertise, the contractor, and not the hirer, should ordinarily be liable for contract workers' injuries. Based on this rationale, it's not quite correct to describe the *Privette* doctrine as a rule of "workers' compensation exclusivity," as the parties did in their briefs, and as this Court did in an order dismissing the prior iteration of the complaint. The *Privette* doctrine is best thought of as a more general tort principle that limits a hirer's liability.[2]

Young and Velez invoke two exceptions to this general rule: the "retained control" exception and the "unsafe equipment" exception. Under the first exception, a hirer is liable to a contract worker if the hirer "retained control" over the work, and its exercise of that control "affirmatively contributed" to the contract worker's injuries. *Sandoval*, 12 Cal. 5th at 274. To put

---

[2] If it were truly a principle of "workers' compensation exclusivity," then it would be strange to apply it here because Young and Velez are not eligible for California workers' compensation as out of state employees. Cal. Labor Code §§ 5305, 3600.5; *cf. Tverberg*, 49 Cal. 4th at 522.

this exception in terms of delegation, in those circumstances the hirer's decision to exercise control over the contractor means the hirer has not delegated its responsibilities at all. Under the second exception, a hirer is liable to a contract worker if its "provision of unsafe equipment affirmatively contribute[d]" to the contract worker's injuries. *McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219, 222 (2002). In that scenario, the hirer's control over the equipment again means that it has not delegated its relevant responsibilities.

A

Young and Velez have plausibly alleged that the retained control exception applies. The California Supreme Court breaks down the exception into three distinct elements. First, a hirer "retains control" if it "sufficiently limit[s] the contractor's freedom to perform the contracted work in the contractor's own manner." *Sandoval*, 12 Cal. 5th at 275. Second, the hirer must "actually exercise" that control in practice—it cannot be purely theoretical. *Id.* at 276. Third, the exercised control must "affirmatively contribute" to the contract worker's injuries, meaning the hirer's conduct was an independent cause of the injuries, outside of the contractor's role. *Id.* at 277.

This can be a stringent test. A hirer "may retain a broad general power of supervision and control as to the results of the work" without exposing itself to liability. *McDonald v. Shell Oil Co.*, 44 Cal. 2d 785, 790 (1955); *Sandoval*, 12 Cal. 5th at 275. That broad power can include "the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, [and] the right to prescribe alterations or deviations in the work." *McDonald*, 44 Cal. 2d at 790 (citations omitted); *Sandoval*, 12 Cal. 5th at 275. But if the hirer has involved itself to such a degree that the contractor no longer has the freedom to "perform the contracted work in the contractor's own manner," and the hirer's exercise of that control contributes to the contract worker's injuries, the exception applies. *Sandoval*, 12 Cal. 5th at 275–76.

The plaintiffs' strongest allegations relate to TikTok's control over the content moderation software. According to the complaint, TikTok required all content moderators to use

5

its proprietary TCS software. Compl. ¶ 32. TikTok had "full control" over that software, including control over how the videos were displayed and how the audio was streamed. ¶¶ 125, 127. It is highly plausible that this control was exclusive: Based on the allegations in the complaint, it does not seem that the contractor could use its own software or tinker with TikTok's. Given that control, TikTok had a duty to use reasonable care related to the software. And accepting the allegations as true, TikTok failed to adopt reasonable safeguards in the software that could mitigate the harm from the videos.

TikTok repeatedly argues that "a hirer's alleged failure to implement precautionary measures does not constitute affirmative contribution to harm." Dkt. No. 51 at 14. That is wrong: As the California Supreme Court has made clear, "neither 'actual exercise' nor 'affirmative contribution' requires that the hirer's negligence (if any) consist of an affirmative act. The hirer's negligence may take the form of any act, course of conduct, or *failure to take a reasonable precaution* that is within the scope of its duty…" *Sandoval*, 12 Cal. 5th at 277. To put it another way, when a hirer "entrusts work to an independent contractor but retains control over any part of the work, the [hirer] has a duty of reasonable care as to the exercise of the retained control," Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 56 (2012), and that duty can include the duty to implement reasonable safety measures.

The complaint alleges that TikTok could have adopted two different kinds of safety measures in its software. First, the software could have modified the videos themselves. The National Center for Missing and Exploited Children's guidelines for protecting content moderators recommend "changing the color or resolution of [a graphic image], superimposing a grid over the image, changing the direction of the image, blurring portions of the image, reducing the size of the image and muting audio." Compl. ¶ 104. Accepting the allegations as true, it is plausible that TikTok's failure to adopt these safety measures affirmatively contributed to the plaintiffs' injuries.

The harm could also plausibly be mitigated if the software had better sorted the videos into graphic and non-graphic categories, so that moderators could have taken breaks from the graphic content. The Technology Coalition—an industry group that counts TikTok as a

member—publishes an "Employee Resilience Guidebook for Handling Child Sex Abuse Images," that recommends limiting the time moderators spend viewing disturbing content to no more than four consecutive hours and encouraging them to switch to other projects to "get relief." ¶ 93, 100. The Guidebook also recommends preventing moderators from viewing child pornography for the last hour of their workday. *Id.*

According to the complaint, TikTok's software purported to give content moderators control over what kinds of videos they watched. It sorted the videos into different "queues" based on the type of video, and some queues were supposed to exclude graphic content. ¶¶ 55, 103. If these queues were properly organized, content moderators would be able to use some of the mitigation strategies above—taking a break after four hours, switching to less graphic queues, or opting out of child pornography towards the end of the day. ¶ 103. Indeed, according to the complaint, TikTok itself claimed that it allowed content moderators to opt out of viewing child pornography entirely. ¶ 107.

Despite that promise, TikTok's sorting mechanism was allegedly faulty: The queue sorting was "highly inaccurate," and queues often included graphic content when they were not supposed to. ¶ 55. Given these allegedly faulty queues, content moderators got "no respite from seeing graphic content." *Id.* Again, accepting the allegations as true, it's plausible that this system affirmatively contributed to the plaintiffs' injuries, and so the exception applies.

Another way to look at these allegations is to consider whether the contractors could have implemented any of these changes. Even if a hirer is "responsible for the presence of a hazard" and "convey[s] an expectation that the contractor perform its work without eliminating that hazard altogether," the exception does not apply if the contractor has "ample freedom to accommodate that hazard effectively in whatever manner the contractor sees fit." *Sandoval*, 12 Cal. 5th at 276. As such, the retained control test can sometimes turn on whether the hirer has actively interfered with the contractor's ability to adopt a safety measure or "accommodate" (that is, navigate around or mitigate) a known hazard. *See, e.g.*, *McCullar v. SMC Contracting, Inc.*, 83 Cal. App. 5th 1005, 1020 (2022); *Padilla v. Pomona College*, 166 Cal. App. 4th 661, 671 (2008). As noted, it's plausible to infer that TikTok did not give its assorted contractors the

ability to modify the code underlying its proprietary software, so the contractors had no power to change the way the videos were shown or to adopt a more accurate sorting system. True, the contractors might have been able to do something else to mitigate the harm of these videos, like providing mandatory counseling. And according to the complaint, the contractors did provide "minimal therapeutic options." Compl. ¶¶ 63, 64. But it seems unlikely that the California Supreme Court would allow a hirer to interfere with a contractor's ability to adopt obvious safety measures, and then escape liability just because the contractor could adopt some unrelated measure that might treat or reduce the severity of the resulting harm after the fact. *Cf. Sandoval*, 12 Cal. 5th at 276 (explaining that there can be no liability where the contractor has the "*freedom to accommodate [a] hazard effectively in whatever manner the contractor sees fit*") (emphasis added). If that were the standard, the exception would never apply: It is difficult to imagine a case where it would be impossible for a contractor to adopt any safety or mitigation measures at all.

The retained control exception applies to the allegations about the allegedly faulty queues for another reason. As noted, if "the hirer promises to undertake a particular safety measure," and then negligently fails to do so, the hirer is liable for any resulting injury. *Hooker*, 27 Cal. 4th at 212 n.3; *see also Gonzalez v. Mathis*, 12 Cal. 5th 29, 47 (2021) (explaining that a hirer can be liable for "reneging on a promise to remedy a known hazard"). According to the complaint, TikTok promised its moderators that they could opt out of child pornography by using the queue system, but that system is allegedly faulty, so TikTok can be liable for any resulting harm.

The plaintiffs' other allegations, related to TikTok's productivity standards, present a closer question. The plaintiffs allege that TikTok retained control by setting unreasonable speed and accuracy quotas, and that those quotas exacerbated the harm caused by the videos. *See, e.g.*, Compl. ¶ 10. In isolation, one could imagine an argument that these allegations are not enough to bring this case within the scope of the retained control exception. The *Privette* doctrine relies on the notion that a contractor, rather than a hirer, is ordinarily best positioned to evaluate whether work can be done safely in a given set of conditions. *See Sandoval*, 12 Cal. 5th at 269. The contractor, not the hirer, has "the responsibility for assessing whether its workers can perform

their work safely" in the face of a known hazard. *McCullar*, 83 Cal. App. 5th at 1017. One could argue that the content moderation firms had an independent duty to assess whether the quotas were reasonable—and, if they weren't, the content moderation firms should have pushed back.

But the allegations must be viewed in context. The speed and accuracy quotas were imposed through TikTok's proprietary software. *See, e.g.*, Compl. ¶ 41. Once TikTok exercised control over one aspect of the moderators' work—here, the software—it had a duty to use reasonable care as to that exercise of control. And, accepting the allegations as true, TikTok violated that duty by setting unreasonable productivity standards for the use of its software. In addition, Young and Velez allege that TikTok's quotas interfered with their ability to take advantage of their direct employers' "minimal therapeutic options," ¶¶ 63, 64, and so the standards plausibly interfered with the contractor's ability to "accommodate [the] hazard" of the videos, *Sandoval*, 12 Cal. 5th at 276. As explained, the fact that the contractors were able to provide some therapy is not enough for TikTok to evade liability—but the fact that TikTok's control interfered with even that attempt to mitigate the harm confirms that the retained control exception applies.

**B**

Young and Velez have also plausibly alleged that the "unsafe equipment" exception applies. To recall, a hirer may be liable for injuries suffered by its contractor's employees if the hirer negligently provides unsafe equipment to the contractor, and the equipment affirmatively contributes to the injuries. *McKown*, 27 Cal. 4th at 225.

In its prior order, this Court held that the "unsafe equipment" exception did not apply because Young and Velez had not alleged that there was any "defect or safety issue with the software itself." *Young v. ByteDance*, No. 22-cv-1883, 2022 WL 11237733, at *2 (N.D. Cal. Oct. 19, 2022). In the last version of the complaint, they alleged only that TikTok imposed the harmful productivity standards through the software, and that was not enough to make the exception apply. As the discussion above makes clear, Young and Velez have now alleged a defect with the software itself: the allegedly faulty sorting system. It is plausible that the allegedly faulty sorting system affirmatively contributed to the plaintiffs' harm because it

prevented them from using the strategies described above.[3]

**C**

TikTok makes one additional argument: It says that contract workers can only invoke the retained control and unsafe equipment exceptions if they allege physical harm. Young and Velez allege only emotional harm, and so TikTok argues the exceptions do not apply. TikTok's argument is based on *Hooker v. Department of Transportation*, the California Supreme Court case that first established the retained control exception. 27 Cal. 4th 198 (2002). There, the Court held that an injured contract worker could sue a hirer "for the tort of negligent exercise of retained control as set forth in section 414" of the Restatement (Second) of Torts. *Id.* at 201. Section 414 of the second Restatement provides that a hirer who falls under the retained control exception is "subject to liability for *physical harm* to others." *Id.* (quoting Restatement (Second) of Torts § 414 (1965)) (emphasis added). TikTok argues that because *Hooker* incorporates the Restatement, and because the Restatement speaks of physical injury, the plaintiffs cannot recover for their alleged emotional harm.

This argument is defeated by its own logic. Ten years after *Hooker* was decided, the Restatement was revised to omit any reference to physical harm. Section 56, the current provision on retained control, now says, "When an actor entrusts work to an independent contractor but retains control over any part of the work, the actor has a duty of reasonable care as to the exercise of the retained control." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 56 (2012). The California Supreme Court's most recent opinion on the retained control exception references the third Restatement, describing it as the "modern version" and citing to it as the controlling source. *Sandoval*, 12 Cal. 5th at 274, 276, 278, 279. And this makes sense: there is no reason, in this day and age, to think that a hirer's liability to contract workers for negligence is strictly limited to injuries that are physical in nature.[4]

---

[3] TikTok argues that the exception does not apply to the provision of software. Although many of the cases invoking the exception involve physical equipment, there's no reason to think that unsafe software is any different from other unsafe equipment.

[4] TikTok also cites to *Kasperzyk v. Shetler Security Services, Inc.*, to support its argument, but in that case the plaintiff agreed with the defendant's assertion that the retained control exception

10

That the exceptions can apply to purely emotional injuries does not end the matter. TikTok is correct to point out that California law limits the range of scenarios where a defendant can be liable in negligence for emotional harm. Although "damages for emotional distress may be recovered in the absence of either physical injury or impact, the extent to which defendants may be liable for negligent infliction of emotional distress without physical injury has been limited due to public policy considerations." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014).

The plaintiffs argue that these limitations do not apply because they have brought a claim for negligence, not negligent infliction of emotional distress. But under California law "negligent infliction of emotional distress" is not an independent tort—it is a form of "the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Belen v. Ryan Seacrest Productions, LLC*, 65 Cal. App. 5th 1145, 1165 (2021). And California courts have limited a defendant's duty to prevent purely emotional harm. *See, e.g.*, *Gu v. BMW of North America, LLC*, 132 Cal. App. 4th 195, 204–10 (2005). Regardless of how the plaintiffs have styled their claim, those limitations apply.

TikTok argues that, given the public policy considerations at play, "California law requires the defendant to have engaged in additional, egregious conduct before a plaintiff is entitled to recover for emotional or psychological injuries alone." Dkt. No. 51 at 17. But that is not the correct test. Where the plaintiff is the direct victim of the defendant's negligence, the plaintiff's recovery for purely emotional injuries "does not turn on whether [the] defendant's conduct was outrageous or whether there was physical impact or injury. The determinative issue is whether [the] defendant owed [the] plaintiff a duty of care under the circumstances presented." *Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 494 (1997). Determining whether a defendant has such a duty "is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm

---

required physical injury. No. 13-cv-3358, 2014 WL 1760040, at *3, 5 (N.D. Cal. May 2, 2014). That case also pre-dates the California Supreme Court's recent discussion of the third Restatement (although admittedly it does not predate the third Restatement itself).

to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection

between the defendant's conduct and the injury suffered, the moral blame attached to the

defendant's conduct, and the policy of preventing future harm." *Id.* TikTok has not explained

why these factors weigh against finding a duty here—particularly given the nature of the work

TikTok requires the plaintiffs to perform and the foreseeability of the psychological injuries that

allegedly resulted.[5]

## IV

Young and Velez also bring a claim under California's Unfair Competition Law, which

prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code

§ 17200. That claim is dismissed.

In *Sullivan v. Oracle Corp.*, Oracle's out-of-state employees brought a claim under the

UCL alleging that Oracle violated the Fair Labor Standards Act by failing to pay them overtime

for work that was performed entirely outside of California. 51 Cal. 4th 1191 (2011). (The

employees also brought other claims for work performed in California that are not relevant here.)

Regarding those plaintiffs' out-of-state work, the Court noted that there was "only a single

instance of relevant conduct occurring in California": Oracle's decision to classify the employees

as exempt. *Id.* at 1208. That decision was not "unlawful in the abstract"; the violation would be

the "failure to pay overtime when due." *Id.* "Accordingly, that Oracle's decision to classify its

Instructors as exempt was made in California does not, standing alone, justify applying the UCL

to the nonresident plaintiffs' FLSA claims for overtime worked in other states." *Id.* Here, Young

and Velez's work was performed outside of California, and they allege that they were injured

outside of California. Even accepting that TikTok "oversaw" the content moderation from

California, that conduct alone is not enough to justify expanding the UCL to cover these

---

[5] It's worth noting that California's workers' compensation scheme appears to allow an employee to recover for purely psychological injuries, suggesting that California has a public policy interest in protecting workers from emotional harm. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992) ("An employee who suffers a disabling emotional injury caused by the employment is entitled, upon appropriate proof, to workers' compensation benefits, including any necessary disability compensation or medical or hospital benefits.").

circumstances. The plaintiffs' allegations definitively preclude application of the UCL, so dismissal of this claim is with prejudice.[6]

**V**

Under California law, a company that hires a contractor is ordinarily not liable for the injuries of that contractor's employees. But taking the well-pleaded allegations in the complaint as true, TikTok exercised a high degree of control over its content moderators' work (and provided them with unsafe equipment), and it's plausible that those decisions contributed to the plaintiffs' injuries. For that reason, California law allows the plaintiffs' negligence claim to go forward.

**IT IS SO ORDERED.**

Dated: May 15, 2023

_____
VINCE CHHABRIA
United States District Judge

---

[6] The parties' agreement that California law applies to this case does not create a cause of action under the UCL. *See Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. 2014).