# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel 213.229.7000
gibsondunn.com

August 24, 2023

The Honorable Vince Chhabria
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Young, et al. v. ByteDance Inc., et al.*, Case No. 3:22-cv-01883-VC

Your Honor:

Defendants ByteDance Inc. and TikTok Inc. respectfully submit this supplemental letter brief in response to the Court's August 17, 2023 Order inviting the parties to address: (1) the test set forth in *Dylag v. West Las Vegas Surgery Center, LLC*, 719 F. App'x 568 (9th Cir. 2017); and (2) if the *Dylag* test is applied, how the equitable estoppel issue should be decided. Dkt. 98.

As explained below, the Court should follow the vast majority of Nevada courts by applying the equitable estoppel doctrine when the plaintiff alleges "substantially interdependent and concerted misconduct" between the signatory and non-signatory, *Hansen v. Musk*, 2020 WL 4004800, at *3 (D. Nev. July 15, 2020) (citing *Hard Rock Hotel, Inc. v. Eighth Judicial District Court of State in & for County of Clark*, 390 P.3d 166 (2017)), rather than the Ninth Circuit's speculation in *Dylag* that Nevada courts might "require that the allegations of 'substantially interdependent and concerted misconduct' be 'founded in or intimately connected with the obligations of the underlying agreement.'" *Dylag*, 719 F. App'x at 571 (citation omitted). But even if the Court applies *Dylag*'s formulation of the test, Plaintiff Ashley Velez's claim should still be sent to arbitration.

### I. The "Founded In Or Intimately Connected With" Standard Does Not Apply Under Nevada Law

To start, this Court should adhere to the equitable estoppel standard that Nevada courts have actually applied, rather than the Ninth Circuit's speculation in *Dylag* of what Nevada courts might do—but have not yet done in the five-plus years since *Dylag* was decided. *See Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) ("The task of a federal court in a diversity action is to approximate state law as closely as possible . . . ."); *Birchler v. Gehl. Co.*, 88 F.3d 518, 521 (7th Cir. 1996) (holding federal courts should "avoid speculation about trends in diversity cases"); *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976) (federal courts should "apply state law, not . . . participate in an effort to change it").

In *Dylag*, an employee sued his co-employers for wrongful termination, and both employers moved to compel the plaintiff's claims to arbitration based on an agreement between the plaintiff and one of the employers. *See* 719 F. App'x at 570. The non-signatory employer sought to compel arbitration under Nevada law on an equitable estoppel theory. *See id.* at 570–71. The Ninth Circuit noted that there are "two avenues for compelling arbitration" under Nevada law, the second of which is "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 571 (quoting *Hard Rock Hotel*, 390 P.3d 166, at *1 n.4, *2). The court went on to speculate: "[w]e are confident that . . .

Nevada would require that the allegations of 'substantially interdependent and concerted misconduct' be 'founded in or intimately connected with the obligations of the underlying agreement,'" even though *Hard Rock* contained no indication of imposing any such requirement. *Id.* (internal citations omitted).

The court then concluded that the non-signatory employer could not meet the existing "substantially interdependent and concerted misconduct" standard. Specifically, the Ninth Circuit found the plaintiff's wrongful termination claims were not based on the relationship between his co-employers or his employment *at all*, but rather on federal anti-discrimination statutes. *Id*. Secondarily, the court found that the plaintiff "ha[d] not asserted that [the non-signatory employer] suspended or fired him, participated in these decisions, or discriminated against him." *Id.* In other words, the Ninth Circuit found that the plaintiff had not alleged *any* concerted misconduct by the co-employers, and as a result, could not be equitably estopped from refusing to arbitrate his claims with the non-signatory employer under existing Nevada law. The court briefly observed that, "even if" those allegations were made, they "would not be founded in or intertwined with the obligations in [the plaintiff's] employment contract with [the signatory employer]." *Id.*

Given the ultimate basis for the Ninth Circuit's decision—namely, that the defendants in *Dylag* had not satisfied even the "substantially interdependent and concerted misconduct" standard, *see* 719 F. App'x at 571, *Dylag*'s statement regarding the "founded in or intertwined standard" is dicta that is not binding upon this Court. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of delivering a judicial opinion, but is unnecessary to the decision in the case and is therefore not precedential." (cleaned up)). And indeed, despite the Ninth Circuit's speculation in *Dylag*, no Nevada court has ever applied the more narrow "founded in or intimately connected with" equitable estoppel standard under Nevada law. Similarly, federal courts applying Nevada law even after *Dylag* have overwhelmingly applied the broader "substantially interdependent and concerted misconduct" standard that examines the non-signatory's influence and control over the signatory without regard to whether the claims of the party to be estopped are founded in or intimately connected with the agreement containing an arbitration clause. *See, e.g.*, *Hansen*, 2020 WL 4004800, at *3 (compelling arbitration under Nevada law under equitable estoppel principles); *Dropp v. Diamond Resorts Int'l, Inc.*, 2019 WL 332399, at *5 (D. Nev. Jan. 25, 2019) (same); *Banq, Inc. v. Purcell*, 2023 WL 205759, at *5 (D. Nev. Jan. 17, 2023) (same); *King v. Robertson*, 2022 WL 4466201, at *4 (D. Nev. Sept. 23, 2022) (same). This Court should do the same. *See Del Webb Cmtys.*, 652 F.3d at 1154; *Birchler*, 88 F.3d at 521; *Tarr*, 544 F.2d at 15.

## II. Even If The Court Were To Apply The "Founded In Or Intimately Connected" Standard, Velez's Claim Is Still Subject To Arbitration

Even if the Court were to apply the "founded in or intimately connected with" standard, Plaintiff Velez's claim should still be compelled to arbitration. *Franklin v. Community Regional Medical Center*, 998 F.3d 867 (9th Cir. 2021), is particularly instructive. There, the defendant hospital moved to compel arbitration of the plaintiff's wage and overtime claims pursuant to an arbitration agreement she entered into with a staffing agency, United Staffing Solutions, Inc. ("USSI"). *See id.* at 869. The hospital had contracted with a managed service provider, which in

2

DEFENDANTS' SUPPLEMENTAL LETTER BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO COMPEL ARBITRATION - CASE NO. 3:22-CV-01883-VC

turn had contracted with USSI to provide nurses, like the plaintiff, for the hospital. *See id.* The hospital was not a signatory to the arbitration agreement between the plaintiff and USSI. *See id.*

The Ninth Circuit, applying California law, affirmed the district court's decision granting the non-signatory hospital's motion to compel under equitable estoppel principles, finding the plaintiff's claims against the hospital were "intimately founded in and intertwined with" her employment contract with USSI. *Id.* at 876. After analyzing the plaintiff's claims "by looking at the relationship between the parties and their connection to the alleged violations," the Ninth Circuit found that the plaintiff's employment with USSI "is central to her claims." *Id.* at 875 The court observed, for example, that while the plaintiff alleged the hospital acted unlawfully by requiring her to perform off-the-clock work, "USSI was responsible for reviewing the timekeeping records and raising any discrepancies with the Hospital." *Id.* Thus, although the plaintiff did not mention USSI in her complaint, the court concluded that "the substance of her claims is rooted in her employment relationship with USSI, which is governed by the Arbitration Agreement." *Id.*; *see also, e.g.*, *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 635 F. Supp. 3d 883, 895–96 (N.D. Cal. 2022) (compelling arbitration of plaintiff's labor code claims where defendant was "akin to the assignment/client compan[y] in" *Franklin*); *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 787 (2017) (agreeing plaintiff's labor code and unfair business practices claims "presumed the existence of the employment agreement with the signatory defendant").

The same reasoning applies here. Like the plaintiff in *Franklin*, Plaintiff Velez's allegations against Defendants are "rooted in her employment relationship with" Telus, the equivalent of the staffing agency in *Franklin*. *Franklin*, 998 F.3d at 875; *see* Mot. at 12–15; Reply at 6–8. Specifically, while Plaintiff Velez alleges she was injured while performing content moderation work for Defendants, she simultaneously alleges she only performed that work because she was employed by Telus; but for her work at Telus, she has no connection to Defendants. *See* SAC ¶ 44. In addition, her allegations challenge purportedly unlawful conduct she claims *Telus* carried out, such as issuing Defendants' "reprimand[s]" and "penalties" for supposedly not meeting Defendants' productivity standards, or docking paychecks if she did not adhere to those standards. SAC ¶¶ 57, 61–62, 169; *see Franklin*, 998 F.3d at 875. As a result, while it may be true that, as Plaintiff Velez claims, she "could hypothetically sustain her claims even if there were no [employment agreement with Telus], . . . a factfinder would still need information about," for instance, "how and whether [she] was paid by [Telus]," as well as other conditions of employment she claims Defendants directed Telus to implement. *Franklin*, 998 F.3d at 876. Put differently, whether she can "maintain liability against [Defendants], given [Telus'] role as [her] employer, cannot be answered without reference to [her employment and arbitration agreement with Telus]." *Id.*; *see also Garcia*, 11 Cal. App. 5th at 787.

Under these circumstances, Plaintiff Velez's allegations against Defendants are "intimately founded in and intertwined with" her employment with Telus. *Franklin*, 998 F.3d at 876. Moreover, the arbitration agreement was an (enforceable) condition of employment she assented to when she decided to work for Telus and "governed" any disputes arising out of her employment. *Id.* at 875. Her negligence claim is therefore subject to arbitration.

\* \* \*

For the reasons above and in Defendants' motion and reply brief, the Court should grant Defendants' motion.

Respectfully submitted,

   /s/  *Jesse A. Cripps*
Jesse A. Cripps, SBN 222285
Lauren M. Blas, SBN 296823
Leonora Cohen, SBN 319463
Viola H. Li, SBN 327783
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Attorneys for ByteDance Inc. and TikTok Inc.*