UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REECE YOUNG, et al.,<br><br>               Plaintiffs,<br><br>       v.<br><br>BYTEDANCE INC., et al.,<br><br>             Defendants. | Case No.  22-cv-01883-VC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 78 |

     This is a proposed class action filed by two plaintiffs who were hired by a company, Telus International, to moderate content for TikTok. The plaintiffs allege they suffered psychological harm as a result of their working conditions. They have sued TikTok, but not Telus.

     One of the plaintiffs, Ashley Velez, signed an arbitration agreement with Telus. TikTok was not a party to the agreement, and it was not named as a third-party beneficiary. TikTok nonetheless moves to compel Velez to arbitration, invoking the doctrine of equitable estoppel. The theory is that it would be unfair for Velez to avoid the consequences of an arbitration agreement covering the conditions of her employment by suing a third party, and not her employer, based on those conditions.

     This motion presents two questions. First, who decides whether the doctrine of equitable estoppel requires Velez to arbitrate her dispute with TikTok? The arbitration agreement between Velez and Telus has a delegation provision, so TikTok contends that the question whether equitable estoppel applies must be decided by the arbitrator. That is wrong. It's difficult to understand how any nonparty seeking to compel arbitration on equitable estoppel grounds could

ever invoke a delegation provision. But even if that were possible in some circumstance, it's not possible here, because it's clear that the delegation provision in the arbitration agreement does not apply to disputes between Velez and nonparties like TikTok.

The second question (which is for the Court and not the arbitrator to decide) is whether equitable estoppel applies. It does, so the motion to compel Velez to arbitration is granted.

## I

In 2021, Ashley Velez accepted a job in Nevada with Telus, an outsourcing company that provides various information technology services. Telus hired Velez to moderate content for TikTok on TikTok's mobile app—a task that involves reviewing videos that TikTok users flag for inappropriate content.

As a condition of employment, Velez signed a standard contract with Telus that included an agreement to send disputes to arbitration. The agreement provides that Velez must arbitrate virtually any claims she may have against "the Company" and vice-versa. The Company is defined as Telus and/or its owners, agents, affiliates, successors, assigns, and so on. The parties agree that TikTok is not included within the definition of the Company. Nor does the arbitration agreement name TikTok as a third-party beneficiary.

The contract includes a delegation clause. It gives an arbitrator "the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the arbitration agreement. Elsewhere, the contract states that arbitration of employment disputes under the agreement must follow the rules of the Judicial Arbitration and Mediation Services (or JAMS for short).

In 2022, Velez filed a proposed class action against TikTok on behalf of herself and other content moderators.[1] Velez claims that moderating content for TikTok put her at an increased risk of mental health problems. And she alleges that TikTok, not Telus, was responsible for that elevated risk of injury, because TikTok set demanding quotas and imposed unreasonable

---

[1] The suit is actually against both TikTok and its parent company, ByteDance, but this ruling refers to the defendants collectively as "TikTok" for simplicity's sake.

accuracy tests, thereby preventing her from taking adequate breaks from watching disturbing content and from accessing adequate mental health services. As a result of TikTok's requirements, Velez says, underperforming content moderators faced reprimand, docked pay, unfavorable schedule changes, and loss of advancement opportunities. She asserts claims under California law for negligence and unfair competition.[2]

Relying on the arbitration agreement that Velez and Telus signed, TikTok moved to compel arbitration. TikTok argues that it is allowed to enforce the agreement against Velez under Nevada contract law.[3] Specifically, TikTok contends that the state-law doctrine of equitable estoppel precludes Velez from bringing to court a dispute that is essentially about the conditions of her employment with Telus. And TikTok argues that any disagreement on whether equitable estoppel applies is for the arbitrator, not a court, to resolve.

## II

Velez's arbitration agreement with Telus delegates to the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the agreement. Obviously, this means that in the event of a lawsuit between Velez and Telus, the decision whether the action belongs in arbitration must be made by the arbitrator. The question is whether this delegation clause also applies in a lawsuit between Velez and TikTok. This matter is governed by the Federal Arbitration Act and case law interpreting it.

TikTok contends that the delegation provision applies here because it uses general language that does not limit itself to Velez and Telus. But as a whole, the arbitration agreement is crystal clear that it applies only to disputes between Velez and the Company (that is, Telus or its agents, affiliates, etc.). The opening preamble, framing the provisions that follow, contemplates only differences that "may arise between … the 'Company' … and me [Velez]."

_____

[2] It's not clear why California law would apply because Velez performed all her work in Nevada, but that concern is not implicated by this motion.
[3] Although Velez invokes California law for her underlying claims, she concedes that Nevada law applies to the interpretation and application of the arbitration agreement, because she was employed by Telus in Nevada.

The agreement specifies which claims "the Company or me" may or may not bring "against the other." The agreement identifies which other rights "the Company and I are giving up." It describes which arbitration costs and fees "I will be required to pay," and which remaining costs and fees "the Company shall advance." And as previously noted, all agree that TikTok does not fall under the agreement's definition of "the Company." Nor does TikTok assert third-party beneficiary status. Against this backdrop, it makes no sense to interpret the delegation provision as reflecting an intent by Velez to allow an arbitrator to decide whether a dispute between her and TikTok is subject to arbitration. The fact that the delegation provision itself does not refer to disputes "between the Company and me" does not suggest that the parties intended for the delegation provision to cover people who were not parties to the agreement.

Indeed, this conclusion is all but dictated by Ninth Circuit precedent. In *Kramer v. Toyota Motor Co.*, 705 F.3d 1122 (9th Cir. 2013), the plaintiffs bought allegedly defective cars from Toyota dealerships with whom they had agreed to arbitrate. The plaintiffs did not sue the dealerships, instead choosing to sue the manufacturer. The manufacturer sought to compel arbitration, arguing that equitable estoppel precluded the plaintiffs from hauling the manufacturer into court based on the cars they bought from the dealers. The delegation provision stated in seemingly general terms that the agreement "applies to any claim or dispute about whether a claim or dispute should be determined by arbitration." *Id.* at 1125. But the arbitration agreement as a whole made clear that it covered only disputes between the plaintiffs and the dealers. *Id.* at 1127. Thus, the Ninth Circuit ruled that the manufacturer could not invoke the delegation provision. "The language of the contracts," the court explained, "evidences plaintiffs' intent to arbitrate arbitrability with the dealerships and no one else, [and] the dealerships are not a party to this action." *Id.*[4]

---

[4] TikTok relies on a district court ruling that distinguished *Kramer*. *See Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*, No. 19-10337, 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020). But even assuming *Worldwide Film* was correctly decided (which is unclear because the court's description of the facts and of the defendant's reasons for seeking to compel arbitration was so sparse), it only highlights *Kramer*'s applicability here. In *Worldwide Film*, the court ruled that the nonparty could invoke a generally worded delegation provision because the

TikTok's argument, if accepted, would also lead to absurd results. Say, for example, someone were to assault Velez shortly after her work shift was over. And say Velez sued her attacker. Could the attacker hijack that lawsuit by invoking the delegation provision within Velez's arbitration agreement with Telus, filing a motion to compel, and insisting the arbitrator must decide arbitrability? At the hearing on this motion, TikTok candidly conceded that, on its interpretation, the attacker could indeed take the lawsuit on an automatic detour into arbitration. Indeed, under TikTok's theory, any defendant sued by Velez or Telus, even if the suit is filed 50 years from now and has no connection to Velez's employment with Telus, could do the same. There is no reason to think that the contracting parties intended to form such an absurd agreement.[5]

At this point, it's worth taking a step back to recall the basis on which TikTok seeks to compel arbitration in this case. TikTok is not asserting that it actually entered an agreement with Velez to arbitrate, or that it is a third-party beneficiary of the arbitration agreement between Velez and Telus. Rather, TikTok is asserting the doctrine of equitable estoppel. The theory is that Velez is suing based on her employment relationship with Telus but seeking to avoid arbitration by refraining from suing Telus. If TikTok prevails on this equitable estoppel argument, it's not

---

arbitration clause itself was also generally worded, suggesting that both the arbitration clause and the delegation provision could cover nonparties. *Id.* at *3. But here, as in *Kramer*, only the delegation provision is generally worded; the rest of the arbitration agreement includes party-specific language, indicating that the delegation provision is likewise limited to the signatories to the agreement.

[5] Beyond relying on the general language of the delegation clause, TikTok relies on the agreement's incorporation of the JAMS rules, which provide that "disputes" over "who are proper Parties to the Arbitration" are also arbitrable. But that provision just re-raises the same question: Disputes between whom? The only reasonable understanding of the incorporation of the JAMS rules, in light of the rest of the contract, is that only enforceability disputes between Velez and Telus (and presumably any third-party beneficiaries) must go to arbitration. The binding authorities that treat the incorporation of similarly worded arbitral rules as "clear and unmistakable" evidence of delegation do not hold otherwise. Those cases, unlike this one, involved disputes between parties who had both signed the underlying arbitration agreement. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that *contracting parties* agreed to arbitrate arbitrability" (emphasis added)); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) (interpreting rules incorporated in "contract between the [litigating] parties").

because Velez *agreed* to arbitrate anything with TikTok, but because equity requires Velez to submit to arbitration even though she *didn't* agree in advance to do so. And a delegation provision can be invoked only if the parties to the dispute *agreed* that their disagreement about arbitrability would be decided by the arbitrator. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 (9th Cir. 2022) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Perez v. Discover Bank*, 74 F.4th 1003, 1010–11 & n.2 (9th Cir. 2023). So even if TikTok has a good argument for compelling Velez to arbitration on equitable estoppel grounds, it cannot invoke the delegation provision to have that issue decided by an arbitrator. Indeed, it's not clear how a nonparty to an arbitration agreement could ever invoke a delegation provision when seeking to compel arbitration based only on equitable estoppel. As the Eleventh Circuit put it:

> How does one go about delegating the question of equitable estoppel? By definition, there is no contract, which is, after all, why one of the parties is demanding equitable estoppel. So, if there is no contract, how can the issue of equitable estoppel be delegated in the first place?

*Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120 n.7 (11th Cir. 2020); *see also Newman v. Plains All American Pipeline, L.P.*, 23 F.4th 393, 399 (5th Cir. 2022) (explaining more generally that when nonparties seek to enforce arbitration agreements through doctrines such as equitable estoppel, the question of arbitrability is for the court, not the arbitrator, to decide).[6]

Presumably this should have been the primary reason given by the Ninth Circuit in *Kramer* for precluding the manufacturer from invoking the delegation provision in the agreement between the plaintiffs and the dealerships: By definition, there is no contract formed between a party to the contract and a nonparty asserting equitable estoppel, and so the nonparty cannot invoke the delegation provision. Perhaps this threshold issue wasn't properly before the court in

---

[6] In *Swiger v. Rosette*, the Sixth Circuit issued a ruling that appears in tension with the cases discussed above, although it's difficult to tell because the panel did not describe the basis on which the nonparty was seeking to compel arbitration, and did not explain whether the party asserting the arbitration provision was contending that it was a party to the contract. 989 F.3d 501, 505–08 (6th Cir. 2021).

*Kramer*. In any event, even if one were to adopt the assumption that a third party asserting equitable estoppel could in some cases invoke a delegation provision, TikTok cannot do so here, because the only reasonable interpretation of this particular delegation provision is that the parties intended it to apply only to disputes between Velez and Telus. Furthermore, even if there were some ambiguity as to the intent of the parties, that would not change anything, because TikTok could not invoke the delegation provision unless there were clear and unmistakable evidence that it was intended to apply in this situation. *Caremark*, 43 F.4th at 1029; *Kramer*, 705 F.3d at 1127.

### III

So the Court must decide whether equitable estoppel permits TikTok to compel Velez to arbitration. On this issue, principles of state contract law control. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). The arbitration agreement specifies (and the parties agree) that Nevada law governs. Because Nevada law prevents Velez from avoiding arbitration in this case, her claims against TikTok must go to arbitration.

Under Nevada principles of equitable estoppel, a defendant who did not sign an arbitration agreement may nevertheless use it to compel arbitration in two circumstances. *Hard Rock Hotel, Inc. v. Eighth Judicial District Court of State in and for County of Clark*, 2017 WL 881877, at *2 (Nev. 2017) (unpublished); *see also Ahlers v. Ryland Homes Nevada, LLC*, 2010 WL 3276221, at *2 (Nev. 2010) (unpublished). TikTok does not invoke the first basis for equitable estoppel—when the plaintiff relies "on the terms of the written agreement" to assert their claims against the defendant. *Hard Rock Hotel*, 2017 WL 881877, at *2. Instead, TikTok relies on the second and argues that Velez's complaint "raises allegations of substantially interdependent and concerted misconduct" by both the defendant, who did not sign the agreement, and a contracting party who did. *Id.*

That theory fits. As a general matter, it's hard to see how TikTok could have implemented any of its alleged policies and practices without exercising influence and control over Telus, Velez's immediate employer. *See Hansen v. Musk*, 2020 WL 4004800, at *3 (D.

7

Nev. July 15, 2020); *Dropp v. Diamond Resorts International, Inc.*, 2019 WL 332399, at \*5 (D. Nev. Jan. 25, 2019). The details of the complaint suggest as much. Velez alleges that she was "trained" using TikTok's learning materials and "quizzed weekly at [TikTok's] behest." She also alleges that TikTok enforced its unsafe performance standards by instructing its third-party vendors to carry out various disciplinary actions. Content moderators, the complaint explains, would have "promotional opportunities denied" or "their pay withheld" if they did not satisfy TikTok's expectations. Some employees, the complaint continues, were even fired for voicing concerns about the working conditions. No one disputes that only Telus, Velez's employer, could have carried out these measures. That sort of alleged concerted conduct—TikTok's direction paired with Telus's execution—creates the basis for equitable estoppel here.

Velez argues that equitable estoppel should apply only if her claims are also "intimately founded in and intertwined with" her contract with Telus. *See Dylag v. West Las Vegas Surgery Center, LLC*, 719 Fed. Appx. 568, 571 (9th Cir. 2017) (predicting that Nevada would impose such a requirement). Even if that were true under Nevada law, equitable estoppel would still bind Velez because her employment with Telus is "central to her claims." *Franklin v. Community Regional Medical Center*, 998 F.3d 867, 875 (9th Cir. 2021). Velez alleges that Telus hired her to moderate content for TikTok. And she does not dispute that Telus helped implement TikTok's allegedly unsafe accuracy policies, quotas, and training materials by reprimanding underperforming employees or docking their pay—disciplinary measures taken in Telus's role as an employer. So even though Velez rarely mentions Telus in her complaint, "the substance of her claims is rooted in her employment relationship with [Telus], which is governed by the arbitration agreement." *Id.* Think of it this way: Velez could have also sued Telus on essentially the same set of allegations. And had she done so, the arbitration agreement would no doubt apply. Equitable estoppel prevents Velez from sidestepping that agreement by bringing claims only against TikTok instead. *See id.* at 870–71.

Invoking a different line of cases, Velez also argues that TikTok must directly benefit from the arbitration agreement before it can invoke equitable estoppel. But the Nevada cases

applying that test do not match this one. Those cases concern whether and when an arbitration agreement can bind a party who did not sign it. *See, e.g.*, *Truck Insurance Exchange v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 659–60 (Nev. 2008). That is the inverse of this dispute, which asks whether a litigant who did not sign the agreement may nevertheless enforce it against a litigant who did.

One final argument remains: Velez claims that the arbitration agreement is not enforceable because it is procedurally and substantively unconscionable. As to procedure, Velez says that the arbitration agreement was presented to her on a take-it-or-leave-it basis. But under Nevada law, that alone does not make an employment contract procedurally unconscionable. *See Burch v. Second Judicial District Court of State ex rel. County of Washoe*, 49 P.3d 647, 649 (Nev. 2002). As to substance, Velez simply quotes a paragraph from the arbitration provision and asserts without analysis that it is a "cost-shifting, fee-splitting clause." She fails to recognize that the paragraph she quotes contains separate provisions (each of which raises different issues) regarding arbitration fees on the one hand and litigation costs/attorneys' fees on the other. Velez also cites no Nevada case law on the topic, despite the fact that Nevada law indisputably governs the issue. This was not a matter of space constraints—her opposition brief came in seven pages under the limit. Thus, Velez has forfeited her argument in this Court about substantive unconscionability.[7]

---

[7] In any event, it's difficult to see how the provision about litigation costs and attorneys' fees could be invalid—it specifies that each side shall bear its own costs and fees, except to the extent that a party prevails on a claim under a statute that permits fee shifting, in which case the arbitrator may shift fees to the extent permitted by law. The provision about arbitration fees may raise more questions—it provides that the company shall "advance" arbitration fees beyond what a plaintiff would be required to pay in court, but that the arbitrator may redistribute responsibility for paying arbitration fees at the end of the case. It seems like that could violate the restriction that employees forced to arbitrate statutory claims as a condition of their employment be required to pay in arbitration only what they could be required to pay in court. To be sure, the provision does specify (like the provision about costs and attorneys' fees) that the arbitrator may only redistribute responsibility for arbitration fees to the extent permissible by law. But if it's clearly unlawful to redistribute arbitration fees at the end of the case, then a proviso of this nature may not be sufficient to save it from a finding of unconscionability. (Imagine, for example, a provision that said, "we reserve the right to simply declare you the loser at any point during the arbitration, to the extent permissible by law.") But because Velez makes no argument about this (or about substantive unconscionability at all), and because TikTok agrees unequivocally that

## IV

The motion to compel arbitration is granted, and Velez's claims are dismissed without prejudice. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). The claims of the other named plaintiff, Reece Young, will proceed in this Court.

**IT IS SO ORDERED.**

Dated: October 26, 2023

VINCE CHHABRIA
United States District Judge

---

Velez cannot be required to pay in arbitration something she would not be required to pay in a court case, there is no need to explore the issue further. Finally, even if the Court were to declare the provision about arbitration fees unconscionable, the result would merely be to sever that provision from the remainder of the agreement and compel the matter to arbitration in any event. *See Becker v. Keshmiri*, No. 3:19-cv-00602-LRH, 2020 WL 2733944, at *7 (D. Nev. May 26, 2020).